**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BLONDELL B., <br><br>                  Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>                  Defendant. | Civil Action No. 21-09232 (SDW) <br><br> **OPINION** <br><br> June 27, 2022 |

**WIGENTON**, District Judge.

Before this Court is Plaintiff Blondell B.'s ("Plaintiff")[1] [2] appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") with respect to Administrative Law Judge Richard West's ("ALJ") denial of Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). This Court has subject matter jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Venue is proper pursuant to 28 U.S.C § 1391(b). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth below, this Court finds that the ALJ's factual findings are supported by substantial evidence and that his legal determinations are correct. Therefore, the Commissioner's decision is **AFFIRMED**.

---

[1] Plaintiff is identified only by her first name and last initial in this opinion, pursuant to Chief District Judge Freda Wolfson's Standing Order 2021-10, issued on October 1, 2021, *available at* https://www.njd.uscourts.gov/sites/njd/files/SO21-10.pdf.

[2] Plaintiff Blondell B. is a substitute party for her daughter, Kiteria B. (D.E. 5 (Administrative Record ("R.")) at 194.) As used throughout this Opinion, "Plaintiff" refers to Kiteria B.

I.     **PROCEDURAL AND FACTUAL HISTORY**

    **A.  Procedural History**

    Plaintiff filed for DIB on July 19, 2017, alleging disability due to mental health disorders and digestive disorders.  (D.E. 5 (Administrative Record ("R.")) at 67–79.)  Plaintiff alleged a disability onset date of October 14, 2013.  (R. 69, 80.)  Plaintiff's claim was denied at the initial and reconsideration levels on October 23, 2017, and on January 30, 2018, respectively.  (R. 68–79, 81–92.)  Thereafter, Plaintiff requested a hearing before an ALJ.  (R. 104–19.)  Before the hearing could be held, Plaintiff passed away on July 9, 2019.  (R. 34–35.)  Plaintiff's mother, Blondell B., proceeded with the claim as a substitute party.  (R. 194.)  ALJ West held an initial hearing on December 11, 2019, at which he questioned Plaintiff's attorney about the matter.  (R. 32–43.)  At the initial hearing, Plaintiff's counsel amended the onset date of the disability to December 1, 2016, and the date last insured to September 30, 2017.  (R. 37.)  The ALJ held a supplemental hearing on May 27, 2020, at which Vocational Expert ("VE") Mary Anderson testified.  (R. 44–66.)  On June 5, 2020, the court denied Plaintiff's disability application.  (R. 9–26.)  On February 19, 2021, the Appeals Council denied Plaintiff's request for review.  (R. 1–3.)  Plaintiff filed the instant appeal in this Court, and the parties completed timely briefing.  (*See* D.E. 1, 14, 15.)

    **B.  Factual History**

    Plaintiff was a fifty-two-year-old woman with a high school education.  (R. 24, 255, 288.)  She previously worked as an apprentice optician, which is skilled, sedentary work.  (R. 24, 37, 78.)  Plaintiff stopped working in 2013, and subsequently filed a disability benefits application.  (R. 78.)  In April 2018, Plaintiff returned to work intermittently until her death in July 2019.  (R. 14–15, 37–38.)  Below is a synopsis of the relevant medical evidence contained within the record.

<u>Physical Impairments</u>

In October 2013, Plaintiff was hospitalized due to a sore throat and dizziness.  (R. 400–09.)  After receiving physical and psychiatric examinations, she was diagnosed with vertigo and discharged the same day.  (*Id.*)  In May 2017, Rajesh T. Patel, D.O., examined Plaintiff and noted that Plaintiff reported abnormal weight loss, indigestion, bloating, urinary control issues, and decreased appetite.  (R. 412–14.)  Dr. Patel referred Plaintiff to a gastroenterology ("GI") specialist.  (R. 411.)  In June 2017, Plaintiff followed up with Dr. Patel and reported similar symptoms.  (R. 410–11.)  Dr. Patel "[c]ounselled [Plaintiff] on [a] healthy diet" and urged her to see a GI specialist.  (R. 411.)

In July 2017, GI specialist Pavan Sachan, M.D., evaluated Plaintiff, who complained of chronic constipation.  (R. 417.)  Dr. Sachan noted that Plaintiff's abdomen was soft and nontender and had no rigidity.  (*Id.*)  Dr. Sachan prescribed lactulose and a diet change, including "eating more vegetables" and "[a]void[ing] meats."  (R. 418.)  Plaintiff went to Dr. Sachan again in September 2017 and reported continual and chronic constipation.  (R. 415.)  Dr. Sachan prescribed Linzess and recommended that Plaintiff have a colonoscopy once the constipation subsided.  (R. 416.)

At the end of September 2017, Plaintiff saw Dr. Patel again and continued to report constipation and poor appetite, as well as occasional dizziness.  (R. 447–48.)  Dr. Patel recommended that Plaintiff "[c]ontinue with GI care and recommendations."  (R. 449.)

In October 2017, Disability Determination Services ("DDS") medical consultant Mohammed Abbassi independently reviewed Plaintiff's medical records and found that no severe physical impairment was established at that time.  (R. 73.)

In December 2017, Plaintiff went to the emergency room for anxiety, insomnia, and constipation.  (R. 424–41.)  Medical imaging showed "[m]oderate right-sided colonic stool [and] [n]o evidence of bowel obstruction or free air."  (R. 441.)  Plaintiff was treated and released the same day.  (R. 428.)  She then saw Dr. Patel soon after her hospital visit.  (R. 442–44.)  Dr. Patel urged Plaintiff to follow up with Dr. Sachan "ASAP" regarding her gastrointestinal issues and referred her to a psychiatrist to address her anxiety and depression.  (R. 443–44.)

On July 9, 2019, Plaintiff died from stage IV colon cancer.  (R. 288.)

<u>Mental Impairments</u>

In October 2017, David M. Gelber, Ph.D., gave Plaintiff a "Mental Status Examination." (R. 419–23.)  Plaintiff reported general anxiety, panic attacks, social anxiety, and agoraphobia, and confirmed that she was taking multiple medications to help control digestive issues, anxiety, and vertigo.  (R. 420.)  Dr. Gelber noted that Plaintiff experienced violent hand shaking "for the first 10-15 minutes of the exam until she clutch[ed] them together to quell these tremors."  (R. 419.)  Plaintiff reported that she suffered from anxiety for many years, experienced panic attacks three to four times a week, and experienced suicidal ideation.  (R. 420.)  Dr. Gelber noted that Plaintiff was able to independently maintain her personal hygiene and was oriented, with her memory intact.  (R. 422.)  Dr. Gelber also noted that her general intelligence was lower than average, "with average to low[-]average short term member ability, and low to well[-]below[-]average concentration."  (R. 421–22.)  Dr. Gelber observed that Plaintiff was able to independently shower, exercise, clean her home, use a computer, read, and manage her personal finances and banking.  (R. 422.)  Dr. Gelber diagnosed Plaintiff with "[p]anic [d]isorder," "[g]eneralized [a]nxiety [d]isorder," and "[m]ajor [d]epressive [d]isorder."  (R. 422.)

Also in October 2017, Disability Determination Services ("DDS") medical consultant Melanie Callender independently reviewed Plaintiff's medical records and found that Plaintiff had moderate limitations with social interactions, ability to perform activities within a schedule, ability to work closely with others, ability to complete a workday without psychological symptom interruptions, ability to respond to changes, and ability to travel to unfamiliar places; she could, however, perform unskilled work.  (R. 73–79.)

When Plaintiff was hospitalized for constipation in December 2017, she reported feelings of anxiety and insomnia.  (R. 425–26.)  The emergency room record historian noted that while Plaintiff reported feeling anxious and panicky, she was alert, oriented, and cooperative, and she had normal pulse and blood pressure, and normal affect.  (R. 425–27.)  The attending physician prescribed Alprazolam (Xanax).  (R. 427, 434.)

Beginning in January 2018 and continuing through early March 2018, Plaintiff sought outpatient mental health evaluation for her panic disorder, anxiety, and social anxiety with "Licensed Professional Counselors."  (R. 455–67.)  Upon examination, a counselor determined that Plaintiff was cooperative, well-groomed, maintained good eye contact, and was overall pleasant.  (R. 468–74.)  The counselor also noted, however, that Plaintiff had psychomotor agitation and was depressed.  (*Id.*)  The counselor recommended mental health therapy and medication.  (R. 474.)

In January 2018, Disability Determination Services ("DDS") medical consultant Floyd Turhan independently reviewed Plaintiff's medical records and found that while Plaintiff had moderate limitations with concentration, social interactions, and adaptation, she could perform unskilled work.  (R. 86–91.)

### C.      Hearing Testimony

ALJ West conducted an initial hearing on December 11, 2019, at which Plaintiff was represented by counsel.  (R. 32–43.)  At the hearing, counsel amended the disability onset date to December 1, 2016, and discussed Plaintiff's physical and mental health impairments in relation to gaps in the medical records and her sporadic work history.  (*Id.*)

At a subsequent hearing on May 27, 2020, Plaintiff was again represented by counsel.  (R. 44–66.)  VE Anderson appeared and testified that Plaintiff could perform unskilled jobs, including photocopying machine operator, office helper, and bench assembler.  (R. 51.)  These positions, VE Anderson noted, are performed at an unskilled level and require sedentary exertion.  (R. 51–53.)

## II.   LEGAL STANDARD

### A.      Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner.  *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000).  Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions.  *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  Thus, substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla.'"  *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'"  *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.

1983)).  However, if the factual record is adequately developed, "the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence."  *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision."  *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360).  This Court is required to give substantial weight and deference to the ALJ's findings.  *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008).  Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he [or she] accepts and which he [or she] rejects, and the reasons for that determination."  *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

> **B.     The Five-Step Disability Test**

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382.  A claimant will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  The impairment must be severe enough to render the claimant "not only unable to do his [or her] previous work but [unable], considering his [or her] age, education, and work experience, [to] engage in any kind of substantial gainful work [that] exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical,

7

physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . ."  42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step, sequential analysis.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz*, 244 F. App'x at 480.  If the ALJ determines at any step that a claimant is or is not disabled, the ALJ does not proceed to the next step.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(i), 404.1571–76, 416.920(a)(4)(i).  SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit."  20 C.F.R. §§ 404.1510, 416.910.  If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits, regardless of the severity of the claimant's impairments.  *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If the claimant is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on the claimant's ability to work.  20 C.F.R. §§ 404.1521, 416.921; Social Security Rule ("SSR") 85-28, 96-3p, 96-4p.  An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c).  If a severe impairment or combination of impairments is not found, the claimant is not disabled.  20

C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits.   20 C.F.R. §§ 404.1520(d), 416.920(d).   If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC").   20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). RFC is the claimant's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments.   20 C.F.R. §§ 404.1545, 416.945.   The ALJ considers all impairments in this analysis, not just those deemed severe.   20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p.   After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work.   20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f).   If the claimant can perform his or her past relevant work, he or she will not be found disabled under the Act.   20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f).   If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience.   20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v).  Unlike in the first four steps of the analysis, where the claimant bears the burden of persuasion, at step five the Social Security Administration ("SSA") is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors."  20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).  If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

III.   **DISCUSSION**

A.     **The ALJ's Decision**

On June 5, 2020, ALJ West issued a decision concluding that Plaintiff was not disabled from December 1, 2016, through July 9, 2019.  (R. 9–26.)  At step one, the ALJ found that Plaintiff had not engaged in SGA throughout the aforementioned time period.  (R. 14.)  Although Plaintiff had some earnings in 2018 and 2019 at SGA levels, the court could not determine the nature of the work, Plaintiff's performance levels, and whether any special work conditions were given to Plaintiff.  (*Id.*)  Furthermore, the court determined that "there was a continuous 12-month period during which [Plaintiff] did not engage in substantial gainful activity."  (R. 15.)  Therefore, the court concluded, Plaintiff did not engage in SGA and the analysis could proceed.  (R. 14–15.)

At step two, the court found three severe impairments:  colon cancer, depression, and anxiety.  (R. 15.)  The court observed that these impairments "significantly limit[ed] the ability to perform basic work activities as required by SSR 85-28."  (*Id.*)

At step three, ALJ West concluded that Plaintiff did not have an "impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments . . . ,"  and found that the record lacked evidence from treating and examining physicians that would demonstrate that Plaintiff's impairments were the same or equivalent to any

10

listing.  (*Id.*)  Specifically, the court noted that the record failed to satisfy the requirements of Listing Section 13.18 because Plaintiff did not provide "evidence of adenocarcinoma of the large intestine that was inoperable, unresectable, or recurrent; or evidence of squamous cell carcinoma of the anus recurrent after surgery; or evidence of cancer of the large intestine with metastases beyond the regional lymph nodes; or evidence of small cell (oat cell) carcinoma in the large intestine."  (*Id.* (*See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 13.18).)  Additionally, although Plaintiff died from stage IV colon cancer, the court found that the record evidence did not include "objective testing ultimately diagnosing [Plaintiff] with cancer[,] and it is unknown when her cancer, if ever, was diagnosed prior to her death on July 9, 2019."  (*Id.*)

Additionally, the court determined that the severity of Plaintiff's mental impairments did not meet or equal the criteria set forth in Listings 12.04 and 12.06.  (*Id.*)  To meet Listing 12.04, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04.  Paragraph A requires that claimant have a "[d]epressive disorder, characterized by five or more" enumerated criteria, or "[bi]polar disorder, characterized by three or more" enumerated criteria.  *See id.* § 12.04(A)(1)–(2).  Paragraph B requires that a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . . :
>
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others . . . .
> 3. Concentrate, persist, or maintain pace . . . .
> 4. Adapt or manage oneself . . . .

*Id.* at § 12.04(B)(1)–(4).  Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant have medical documentation that the disorder has existed over at least a two-year period, with evidence of ongoing mental health

treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life." *Id.* at § 12.04(C)(1)–(2).

To meet Listing 12.06, a claimant must prove that he or she meets both the "paragraph A" criteria and either the "paragraph B" or "paragraph C" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.06. Paragraph A requires that claimant document either "[a]nxiety disorder, characterized by three or more" enumerated criteria; "[p]anic disorder or agoraphobia, characterized by one or both" enumerated criteria; or "[bi]polar disorder, characterized by one or both" enumerated criteria; or "[o]bsessive-compulsive disorder, characterized by one or both" enumerated criteria. *See id.* § 12.06(A)(1)–(3). Paragraph B requires that a claimant have

> [e]xtreme limitation of one, or marked limitation of two, of the
> following areas of mental functioning . . . :
> 1. Understand, remember, or apply information . . . .
> 2. Interact with others  . . . .
> 3. Concentrate, persist, or maintain pace  . . . .
> 4. Adapt or manage oneself  . . . .

Paragraph C requires that a claimant's "mental disorder in this listing category is 'serious and persistent'" and that the claimant can medically document that the disorder has existed over at least a two-year period, with evidence of ongoing mental health treatment "that diminishes the symptoms and signs of [the claimant's] mental disorder" and "marginal adjustment" in the claimant's ability and "minimal capacity to adapt to changes in . . . environment or to demands that are not already part of . . . daily life." *Id.* at § 12.06(C)(1)–(2).

Here, the court considered "paragraph B" criteria and found that Plaintiff had mild limitation when "understanding, remembering, or applying information," but could manage money and perform daily tasks such as reading, watching television, using a computer, and cooking; and, while she had a lower-average range of intellectual ability and had difficulty with calculations,

12

"[h]er immediate and delayed recall memory were intact." (R. 15–16.) The court also detailed Plaintiff's moderate limitations in her ability to interact with others; ability to concentrate, persist, or maintain pace; and ability to adapt or manage herself. (R. 16–17.) The ALJ concluded that Plaintiff's "mental impairments did not cause at least two "marked" limitations or one 'extreme' limitation, [thus] the 'paragraph B' criteria were not satisfied." (R. 17.) Further, the court noted that Plaintiff's mental impairments did not meet the paragraph C criteria because she was not "hospitalized for mental health related issues," and "was generally able to take care of her activities of daily living independently." (*Id.*)

Before proceeding to step four, ALJ West determined that Plaintiff had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b)[,] except [Plaintiff] was able to understand, remember and carry out simple instructions; have occasional interactions with coworkers, supervisors, and the general public; could not take public transportation; and could deal with changes to essential job functions on an occasional basis." (R. 17.) In making this determination, the court considered Plaintiff's reported pain and symptoms associated with her "panic and anxiety attacks, social anxiety disorder, agoraphobia, digestive issues, sleep issues and vertigo." (R. 17–18.) The court found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," her "statements concerning the intensity, persistence[,] and limiting effects . . . [were] not entirely consistent with the medical evidence and other evidence in the record . . . ." (R. 18.) After thoroughly recounting Plaintiff's medical history concerning physical impairments, the court found that she "consistently reported her symptoms of constipation, inability to eat with weight loss, urinary incontinence[,] and abdominal pain," but "treatment notes d[id] not indicate a diagnosis of colon cancer, the cause of [her] death . . . ." (R. 19.) Throughout the medical records, the court pointed out, Plaintiff "denied

weakness or feeling unsteady on her feet, although [she] acknowledged dizziness at times," "perform[ed] activities of daily living . . . [,] and did not indicate any difficulty with lifting, walking, standing or using the hands, and even returned to full-time work in 2018 and 2019." (R. 20.)  The court concluded that the record supported a determination that Plaintiff could perform light work.  (*Id.*)

In terms of Plaintiff's mental impairments, the court detailed Plaintiff's mental health medical history and found that while Plaintiff "consistently reported her symptoms of anxiety and depression, which were consistent with the diagnoses and treatment in the record," she "maintained full orientation," had good eye contact and cooperation, could follow instructions and pay attention, had coping abilities, and could perform daily activities.  (R. 22.) The ALJ found that Plaintiff "retained the capacity to function adequately to perform many basic activities associated with work," and therefore had the RFC to perform light work, including "lifting and carrying objects weighing up to twenty pounds; frequently lifting and carrying objects weighing up to ten pounds; standing and/or walking up to six hours in an eight-hour workday; and sitting up to six hours in an eight-hour workday . . . , along with the additional limitations . . . ." (R. 23.)  Further, the court determined that Plaintiff "was limited to performing the mental demands of simple work in a work environment with reduced interpersonal contacts." (R. 23–24.)

At step four, ALJ West analyzed Plaintiff's symptoms, psychiatric treatment records, and physical health medical records and found that while Plaintiff had previously engaged in skilled, sedentary work, she was "unable to perform any past relevant work, due to the superior skill level required" for that work.  (R. 17–24.)

At step five, the court detailed VE Anderson's testimony and factored in Plaintiff's "age, education, work experience, and [RFC]."  (R. 24–25.)  Because jobs "existed in significant

numbers in the national economy that [Plaintiff] could have performed," and because VE Anderson's testimony was consistent with the DOT, the court found that Plaintiff was "capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. 25.) The court, consequently, concluded that Plaintiff was not disabled during the relevant period. (R. 25–26.)

### B.      Analysis

On appeal, Plaintiff seeks reversal of Commissioner's decision or remand for reconsideration. (D.E. 14 at 1, 34.) Plaintiff argues that the ALJ erred by failing to find that Plaintiff had a severe gastrointestinal impairment and misused his discretion by not ordering a medical expert to testify about the same impairment. (*Id.* at 4–22.) Plaintiff also contends that the court did not base the RFC determination that Plaintiff could perform unskilled, light work on substantial evidence. (*Id.* at 22–34.) This Court considers the arguments in turn and finds each unpersuasive.

First, Plaintiff asserts that ALJ West failed to find that Plaintiff had a severe gastrointestinal impairment other than colon cancer. (*Id.* at 4–22.) Plaintiff further argues that the ALJ should have had a medical expert testify at the hearing to clarify any "unknowns" in the record. (*Id.* at 15–16.) Plaintiff's arguments are unavailing. At step two, a plaintiff must show "that she suffers from a 'severe medically determinable physical or mental impairment,' . . . ." *Boone v. Barnhart*, 353 F.3d 203, 205 n.4 (3d Cir. 2003) (quoting 20 C.F.R. § 416.920(a)). Signs and symptoms of an illness are not classified as separate impairments. SSR 16-3p ("Under our regulations, an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability.")

Here, at step two the court found colon cancer to be a severe impairment, (R. 15), and Plaintiff's counsel acknowledged that the gastrointestinal problems Plaintiff experienced were symptoms of colon cancer, (D.E. 14 at 13).  For Plaintiff to argue that the court should have considered Plaintiff's gastrointestinal symptoms as an impairment separate and apart from the colon cancer impairment is a request for redundancy that is inconsistent with SSR 16-3p.  The court thoughtfully considered Plaintiff's symptoms, including her gastrointestinal issues, when deciding that her condition did not meet the criteria needed to satisfy a listing.  (R. 15–18.)

Moreover, Plaintiff criticizes the ALJ for failing to order a medical expert to testify after finding that there was insufficient information to determine the onset, severity, and extent of Plaintiff's colon cancer.  (D.E. 14 at 13–15).  A plaintiff has the burden of showing the severity of the impairment, *Salles v. Comm'r of Soc. Sec.,* 229 F. App'x. 140, 145 (3d Cir. 2007), and a plaintiff bears the burden of proving her impairments satisfy all of the criteria in a particular listing, *Sullivan v. Zebley,* 493 U.S. 521, 530 (1990) ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Here, Plaintiff's counsel acknowledges that the ALJ has full discretion in deciding whether medical expert testimony is required.  (D.E. 14 at 15–16 (citing SSR 18-1p).  Plaintiff's counsel also concedes that "a lot of information regarding the colon cancer that ended the applicant's life 'is unknown' and admittedly, it was up to [Plaintiff] to supply the information upon which her disability application was based."  (*Id.* at 14.)  The acknowledgement and concession reveal fatal flaws in Plaintiff's argument.  The court does not have an obligation to shoulder a plaintiff's burden of proof; the court's role is to examine the medical record evidence a plaintiff puts forth—not to supply additional evidence to develop or enhance a plaintiff's claim.  ALJ West appropriately employed his discretion in determining that medical expert testimony was not required and that

the medical records Plaintiff provided were sufficient to determine that Plaintiff suffered three severe impairments: colon cancer, depressive disorder, and anxiety disorder. (R. 15–24.) Plaintiff had opportunities to present testimony from a medical expert or experts at either or both administrative hearings but declined to do so. Plaintiff has not demonstrated that the ALJ abused his discretion.

Second, Plaintiff asserts that the court did not base the RFC determination that Plaintiff could perform unskilled, light work on substantial evidence. (D.E. 14 at 22–34.) Specifically, Plaintiff argues that the ALJ's decision failed to provide a "function-by-function" RFC analysis that outlined the rationale for the light work RFC. (*Id.* at 27–28 (quoting SSR 96-8p).) SSR 96-8p requires that "[i]n assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." Additionally, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." SSR 98p. When determining an RFC, an "ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011). Moreover, a plaintiff has the burden of establishing the RFC. *Louis v. Comm'r Soc. Sec.,* 808 F. App'x 114, 117 (3d Cir. 2020). Even if a plaintiff establishes by substantial evidence that the RFC should have been more limited, "[t]he presence of the evidence in the record that supports a contrary conclusion does not undermine the . . . decision so long as the record

provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.,* 306 F. App'x 761, 764 (3d Cir. 2009).

Here, the court based the RFC determination on substantial, relevant, objective medical record evidence and provided a detailed discussion of the evidence. (R. 17–24.) The court comprehensively discussed Plaintiff's physical impairments, detailing her issues with weight loss, constipation, dizziness, vertigo, and indigestion; noting that she "denied weakness or feeling unsteady on her feet" and "perform[ed] activities of daily living"; and confirming that her "examinations also otherwise showed within normal findings, with intact respiratory findings, intact cardiovascular findings[,] and intact neurological and musculoskeletal findings." (R. 18–20.) The court also performed a detailed assessment of Plaintiff's mental impairments, observing that while she "consistently reported her symptoms of anxiety and depression, which were consistent with the diagnoses and treatment in the record," she also remained fully oriented, cooperative, alert, and sustained good eye contact with others; she was able to pay attention for long periods of time; and she reported some improvement in her anxious state at a follow-up in February 2018. (R. 20–22.)

The court accounted for Plaintiff's primary difficulties—her "anxiety and depressive symptoms"—by limiting her RFC to the "mental demands of unskilled work in a work environment with reduced social contacts and only occasional changes to essential job functions . . . ." (*Id.*) The court also noted restricted use of public transportation to accommodate Plaintiff's social anxiety. (*Id.*) The limitations the ALJ imposed were more restrictive than the findings presented by the DDS psychologists. (R. 73–79, 86–91.) Plaintiff has not demonstrated that the RFC should have been further limited, and "the record provides substantial support for [the ALJ's] decision." *Malloy*, 306 F. App'x at 764. This Court will therefore affirm.

**IV.**     **CONCLUSION**

For the foregoing reasons, this Court finds that ALJ West's factual findings were supported by substantial credible evidence in the record and that his legal determinations were correct.  The Commissioner's determination is therefore **AFFIRMED**.  An appropriate order follows.


s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**


Orig:   Clerk
cc:      Parties